# CHARLESTON.

## LADIES TAILORING CO. V. BROWN.

Submitted September 8, 1915.　Decided October 12, 1915.

SALES—*Binding Contract—What Constitutes.*

> A telegram from the seller, inquiring of the buyer to know if he
> wants twenty spring suits at six dollars, replied to at once by letter
> requesting the shipment of the twenty spring suits at five dollars,
> or at six dollars with the privilege to the buyer of selecting such of
> them as he can use, followed by an immediate shipment of the
> twenty suits, and a rendering of the bill therefor at five dollars per
> suit, constitutes a binding contract of sale, provided the suits are of
> the kind and quality ordered.

Error to Circuit Court, Kanawha County.

Action by the Ladies' Tailoring Company against A. I.
Brown. Judgment for defendant, and plaintiff brings error.

*Reversed and rendered.*

*Mathews & Mathews* and *Alexander & McCabe* and *R.
Kemp Morton,* for plaintiff in error.

WILLIAMS, JUDGE:

By this writ of error plaintiff seeks reversal of a judgment
rendered by the circuit court of Kanawha county on the 10th
of September, 1914, reversing a judgment rendered in its
favor, by the intermediate court of Kanawha county, and
setting aside the verdict of a jury and dismissing plaintiff's
action.

The action is on an account for merchandise sold and
delivered to defendant, and was begun before a justice of
the peace, and later appealed to the intermediate court.
Plaintiff is an Ohio corporation, doing business in the city
of Cincinnati. On the 4th of April, 1912, it telegraphed
defendant in Charleston, West Virginia, as follows: "Do
you want about twenty Spring suits, six dollars, subject to
previous sale. Wire?" And on the same day defendant
replied by letter as follows: "Replying to your wire of even
date, will say,—you may ship us the 20 suits at $5.00 or will

select numbers I can use out of this lot at $6.00.'' On the next day plaintiff shipped by express to defendant twenty suits, and also three dresses which had not been ordered, and notified plaintiff by letter of the shipment. Before the goods arrived in Charleston, defendant had left for New York, and while there took sick and remained there several weeks. He left another person in charge of his store, but apparently gave him no directions concerning the package of goods. On the 9th of May, more than a month after the goods were received, and on his return from New York, defendant wrote plaintiff as follows: ''Just returned from New York, where I took sick and was confined to my bed for three weeks,— and upon looking over the suits you sent me, find I can not use them, as I now have a great many garments of a similar nature on hand, and would have no way of disposing of the suits you sent me. Regret having to return these goods to you, and will try to give you business in the future. Kindly excuse the delay in returning this shipment, and I assure had I been in the city, this matter would have had my prompt attention, but unfortunately I was sick in N. Y. and my employees, held the shipment for my inspection. Hoping you will excuse the unavoidable delay in returning these goods, I remain.''

On the 15th of May plaintiff replied to this letter, declining to accept the goods returned, and requested defendant to notify the express company to recall them. This he declined to do, and refused to pay the bill which plaintiff had, previous to that time, rendered for $115, charging $5 each for the suits, and $5 for each of the three dresses. The judgment of the intermediate court was for $105.

The telegram and letter in reply to it, of April 4, 1912, followed by an immediate shipment of the goods and the rendering of the bill therefor at $5 per suit, unquestionably prove a contract of sale for the twenty spring suits, but not for the three dresses which were not ordered and which seem not to be included in the judgment. That defendant was bound to accept and pay for the twenty spring suits, if they were of the kind and quality ordered, there is no room for doubt. The contract so bound him. Whether the suits were of the kind and quality ordered was a question for the jury to

decide, upon the conflicting testimony of defendant and plaintiff's general manager. Their verdict is necessarily a decision of that issue in favor of plaintiff, and the evidence supports it. The first letter written by defendant, after he returned from New York and examined the goods, which letter we have above quoted, clearly shows that he did not decline to accept the suits because they were not of the quality and kind ordered, but rather, as he there states, because he then had a great many suits of similar nature on hand, "and would have no way of disposing of the suits" which he had requested plaintiff to ship to him. The jury were unquestionably justified in finding for the plaintiff upon the conflicting testimony.

The action of the court in refusing to give certain instructions asked for by defendant, and in giving certain others at the request of plaintiff, is complained of. We have carefully examined these instructions and do not find any error in the rulings of the trial court. They involve only well established and familiar principles relating to sales. It does not appear that there was any trial had in the circuit court, and why it reversed the judgment of the intermediate court and dismissed plaintiff's action, without a trial, does not appear. No brief is filed for defendant and the case was not orally argued.

The judgment of the circuit court will be reversed, and an order entered here affirming the judgment of the intermediate court of Kanawha county.

*Reversed and rendered.*